This case was initially heard before Deputy Commissioner Tamara R. Nance in Greensboro on February 4, 1994. After the hearing, the parties deposed Dr. Blackwell, Dr. Kelly, Dr. Hussey, Dr. Goode, Dr. Sanders, Dr. Ross, Dr. Smith and Dr. Mortenson.
There is a Form 21 agreement in the file which was approved by the Industrial Commission and is a part of the record. Pursuant to that agreement, plaintiff was paid temporary total disability benefits from March 17, 1992 through July 20, 1992.
The parties stipulated that plaintiff was also paid temporary total disability benefits from April 26, 1993 through July 4, 1993 (not pursuant to an agreement, however) and further stipulated to the I.C. Forms 18, 19, 33, 33R, 28B dated August 5, 1992 and 28B dated August 4, 1993.
The undersigned have reviewed the Award based upon the record of the proceedings before the deputy commissioner. The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner with some modification. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate Award.
* * * * * * * *
Based upon the competent and convincing evidence adduced from the record, the Full Commission make the following
FINDINGS OF FACT
1. Plaintiff is 52 years old. He completed school through the eighth grade and holds the highest certification available for a welder.
2. Plaintiff was employed by defendant-employer as a welder. He was a good worker, but prior to the injury, he complained of pain throughout his body so often that his co-workers learned to dismiss his complaints. On March 16, 1992, he fell 15 feet from a bridge onto cement below while welding, sustaining a fractured pelvis, fractured ribs, and fractured right elbow. Dr. Mortenson treated plaintiff for a month and a half following the injury and at no time did plaintiff complain of pain in his neck from the injury.
3. Plaintiff had a significant pre-existing history of physical and psychiatric problems. In 1976 he underwent surgery for a ruptured cervical disc, which left him with a 15% permanent partial disability to his back. The pain in his neck continued long after he was released from that surgery. In the 10 years prior to March, 1992, plaintiff had significant complaints of pain in the neck, low back, upper back, left elbow, left and right knees, both legs and also migraine headache pains. He was diagnosed with myofascial syndrome with cervical trigger points for his complaints of chronic pain over his entire body. Plaintiff also suffered from depression in the 10 years prior to March, 1992 including four months prior to his injury of March, 1992. Plaintiff was treated throughout 1991 for severe systemic arterial hypertension.
4. As a result of his March 16, 1992, injury plaintiff came under Dr. Hussey's care on May 8, 1992. At that point, plaintiff complained of neck, right shoulder and arm pain. Dr. Hussey, a neurosurgeon, released plaintiff from his care on May 11, 1992 because there was no evidence of pressure on a nerve root or other neurological problem.
5. Plaintiff was treated by Dr. Ross from May 11, 1992 to July 30, 1992, primarily for his neck, right elbow and right hip/groin, although plaintiff also complained of headaches, pain in both shoulders and left sided chest pain. A CT scan of the neck showed no acute injury that Dr. Ross could relate to the fall of March 16, 1992. By July 30, 1992, plaintiff had only very mild residual stiffness in his right elbow and mild hip pain and stiffness and he was released by Dr. Ross with a 5% rating to both his arm and his back and no impairment referable to the ribs or the right wrist sprain. Dr. Ross released plaintiff to return to work without restrictions, except for plaintiff's neck complaints, for which Dr. Ross referred plaintiff back to Dr. Hussey. During his treatment of plaintiff, Dr. Ross noted an exaggerated pain response and voluntary guarding.
6. When plaintiff returned to Dr. Hussey on August 4, 1992, he exhibited giveaway weakness of all muscle groups in both arms which was voluntary and not evidence of true weakness. All motion was exaggerated and when Dr. Hussey tried to explain cervical traction to plaintiff, he walked away with no interest in what treatment from which he might benefit. On August 18, 1992, plaintiff did not mention neck pain among his myriad of complaints until Dr. Hussey specifically questioned him about it. Dr. Hussey did not identify any injury to the neck to treat and his diagnosis was neck, arm and hand pain of undetermined etiology. Dr. Hussey referred plaintiff to a pain clinic in November, 1992 for his multiple complaints, but the pain clinic determined after extensive initial work-up that plaintiff was not an appropriate candidate for treatment because he was working nine hours a day and sleeping seven hours a night.
7. Plaintiff returned to work for defendant-employer as a welder on July 20, 1992. When he returned to work he did not have a driver's license for reasons unrelated to the injury, and therefore had to work out of the shop rather than on site. Working in the shop, there was always someone available to assist plaintiff with any heavy lifting. For the most part, plaintiff performed all the same duties he did before the injury and in fact did a better job than he did prior to the injury. Plaintiff earned the same hourly wage after the injury as he was earning at the time of the injury. To the extent that he may on occasion not have worked as many hours per week as he did prior to the injury, the decrease in his weekly wage was due to availability of work and was not in any way attributable to plaintiff's injury or limitations therefrom.
8. After working full time for nine months after July 20, 1992, plaintiff went back out of work in April, 1993 to be hospitalized for high blood pressure. When plaintiff's girlfriend came to pick up his check, she advised defendant-employer that plaintiff had been hospitalized for sky-high blood pressure. Defendant-employer was never advised that plaintiff was having problems performing his work. Defendant-employer made several attempts to contact plaintiff about returning to work but has never heard from plaintiff.
9. Dr. Hussey referred plaintiff to Dr. Kelly on April 22, 1993. Plaintiff complained that his entire body was hurting due to the fall, but failed to advise Dr. Kelly that he had just been hospitalized for high blood pressure. Dr. Kelly noted that plaintiff's symptoms seemed all out of proportion to the findings on exam. X-rays revealed degenerative disc disease of the lumbar spine which was neither caused, nor exacerbated by the injury of March 16, 1992. Plaintiff also did not tell Dr. Kelly that he had worked for nine months after the injury. Given plaintiff's exaggerated symptoms which were not supported by objective findings and his failure to give Dr. Kelly an accurate history regarding his return to work and recent hospitalization for high blood pressure, little weight is attached to Dr. Kelly's testimony that plaintiff was unable to work from April to June, 1993 because of the March, 1992 injury.
10. To the extent that plaintiff's high blood pressure problem may have necessitated hospitalization in April, 1993 and interfered with his ability to work thereafter, his high blood pressure was not caused, aggravated or exacerbated by the injury in March, 1992. Plaintiff's severe systemic arterial hypertension pre-existed his March, 1992 injury.
11. When plaintiff came under the care of Dr. Sanders, a psychiatrist, during a hospital admission for hypertension in August, 1993, plaintiff was not truthful in reporting his history to Dr. Sanders. He denied past psychiatric treatment, denied alcohol or drug abuse (even though he tested positive for barbiturates upon admission) and reported that he had not been able to work at all since the March, 1992 injury. Taking into consideration plaintiff's failure to be honest with the doctor to whom he was looking for psychiatric treatment, plaintiff's long standing pre-existing psychiatric problems, the behavior plaintiff exhibited during his February, 1994 psychiatric admission which prompted Dr. Jones to conclude that plaintiff was manipulating for ulterior motives, Dr. Neave's observation that plaintiff's "panacea of complaints" are associated with emotional overlay, the conclusion reached by several doctors that plaintiff was exaggerating his complaints and that they could find no objective basis for his complaints, the undersigned find that any physical or mental disability plaintiff may have had after April, 1993 was not caused, aggravated or exacerbated by his March 16, 1992 injury.
12. Plaintiff reached maximum medical improvement on July 20, 1992; however, he still remained under his doctor's care thereafter due to the need for further testing and diagnosis and due to his multiple complaints of pain and other symptoms.
13. Plaintiff has made no effort to return to work in any capacity after he left in April, 1993 due to hypertension, nor has he made any effort to find other suitable employment.
14. As a result of the injury of March 16, 1992, plaintiff retains a 5% permanent partial disability to the right arm and a 5% permanent partial disability to the back.
* * * * * * * *
The foregoing findings of fact engender the following
CONCLUSIONS OF LAW
1. Inasmuch as plaintiff has not been temporarily and totally disabled as a result of the injury of March 16, 1992 since the date he last worked in his former employment in April, 1993, he is not entitled to further benefits under N.C. Gen. Stat. § 97-29 at this time.
2. Whether or not to give defendants a credit for temporary total disability benefits paid from April through June, 1993 is discretionary under N.C. Gen. Stat. § 97-42. Inasmuch as those benefits were not paid pursuant to a form agreement approved by the Industrial Commission, the undersigned will not approve a credit for defendants in this case.
3. As a result of the injury of March 16, 1992, plaintiff retains a 5% permanent disability to his arm and a 5% permanent disability to his back which entitles him to benefits under N.C. Gen. Stat. § 97-31 (13) and (23) for a period of 27 weeks.
4. Plaintiff is entitled to payment by defendants for all medical treatment arising from his compensable injury.
* * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enter the following
AWARD
1. Defendants shall pay to plaintiff permanent partial disability compensation at the rate of $316.88 per week for a period of 27 weeks. This compensation has accrued and shall be paid to plaintiff in a lump sum, subject to the attorney's fee hereinafter approved.
2. Defendants shall pay for all medical treatment provided to plaintiff as a result of his compensable injury including but not limited to that provided by Dr. Hussey, Dr. Kelly Dr. Goode, Dr. Ross, Dr. Mortenson, Dr. Neave and for any referrals to other medical providers made by them. Provided, however, defendants shall not pay for treatment provided to plaintiff by or through Dr. Blackwell and Dr. Saunders. Defendants shall not pay for any treatment related to plaintiff's hypertension.
3. Plaintiff's attorney is entitled to a fee of 25% of the compensation awarded herein, which amount shall be deducted from the lump sum due plaintiff and paid directly to Ms. Sumner.
4. Defendants shall pay an expert witness fee in the amount of $275.00 to Dr. Mortenson, $100.00 to Dr. Smith, $375.00 to Dr. Saunders, $275.00 to Dr. Ross, $275.00 to Dr. Goode, $250.00 to Dr. Hussey, $300.00 to Dr. Kelly and $300.00 to Dr. Blackwell.
5. Defendants shall pay the costs.
 S/ _________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________________ COY M. VANCE COMMISSIONER
S/ _________________________ GREGORY WILLIS DEPUTY COMMISSIONER
BSB:md